UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEALTH FREEDOM DEFENSE FUND, INC., et. al., <br><br>       Plaintiffs, <br><br>       v. <br><br> CITY OF HAILEY, IDAHO, a municipal corporation; and MARTHA BURKE, in her official capacity as the Mayor of the city of Hailey, as well as her personal capacity for the purposes of Section 1983 claims, <br><br>       Defendants, | Case No. 1:21-cv-00389-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants City of Hailey and Martha Burke's (collectively "the City") Motion to Dismiss (Dkt. 11) and Motion to Strike (Dkt. 21), as well as Plaintiffs'[1] Motion for Preliminary Injunction (Dkt. 18). Additionally, just before the scheduled hearing in this matter, Plaintiffs filed a Motion to Supplement. Dkt. 27.

The Court held oral argument on February 16, 2022, and took the matters under advisement. Upon review, and for the reasons outlined below, the Court GRANTS the City's Motion and dismisses this case. All other motions are deemed moot.

---

[1] Plaintiffs in this case are Health Freedom Defense Fund, Inc.; Ryan Blaser and his minor children, K.B.B. and K.S.B.; Michelle Sandoz and her minor children, R.S. and E.S.; Emily Knowles and her minor children, A.G.K. and A.T.K.; Barbara Mercer; and Kendall Nelson.

## II. OVERVIEW

The COVID-19 pandemic has reached every corner of the globe and affected all humanity to varying degrees. The pandemic has caused widespread devastation—in terms of lives lost and economic uncertainty. It has also brought to light numerous challenges never before considered. Many of these challenges relate to public health matters. Other challenges touch on human interaction. Still others bring in politics and questions of law.

In the present case, Plaintiffs disagree with the City of Hailey's decision to utilize "mask mandates" as a public health measure during the pandemic. Plaintiffs assert such a course of action is akin to forced human experimentation in violation of their civil rights.

Plaintiffs are entitled to their opinion. However, their disagreement with the mandates, standing alone, does not give rise to a cause of action. The relatively simple and unintrusive requirement that citizens wear a mask to protect their own health, and the health of others, does not rise to the level of forced human experimentation or violate any fundamental rights in violation of the United States Constitution.

The City now moves to dismiss Plaintiffs' lawsuit on the grounds that they lack legal standing to pursue their claims. Furthermore, the City contends that even if Plaintiffs had standing, their claims are not justiciable. Upon review, the Court must agree.

Plaintiffs have also filed a motion for injunctive relief hoping to curtail the City's authority to require masks during the pendency of this suit. In response to Plaintiffs' Motion, the City filed a Motion to Strike. Just before the hearing on the above-mentioned motions, Plaintiffs filed a Motion to Supplement. Because the Court grants the City's Motion to Dismiss, the remaining motions are all but moot. Nevertheless, to preserve a

complete record of these proceedings, the Court will briefly address the remaining motions at the end of its decision.

As explained below, the Court finds that Plaintiffs lack standing because they have not alleged any injury in fact, because there is no causal connection between the City's actions and Plaintiffs' alleged injuries, and because a favorable ruling from this Court would not fully remedy Plaintiffs' concerns. Even assuming arguendo that Plaintiffs had standing, the Court finds their Due Process claim fails as a matter of law. None of the "rights" at issue are fundamental. Accordingly, the level of scrutiny the Court applies to the City's actions is rational basis review. In undertaking such a review, the Court finds the City's actions are related to its legitimate interest in protecting the health and safety of its citizens. As such, the Motion to Dismiss is granted and this case closed.

### III. BACKGROUND

#### A. Factual Background

As part of the ongoing COVID-19 pandemic, the City of Hailey, Idaho, has issued numerous Emergency Health Orders over the past two years.

On February 8, 2020, the City enacted Ordinance No. 1277, which granted the City Council the authority to enact emergency public health orders. Ordinance No. 1277 also provided that any such health orders would have a duration of no more than 90 days— subject to extensions by the City Council.

The City's original mask mandate—Order No. 2020-05—took effect on July 1, 2020. It was renewed through subsequent emergency orders on numerous occasions. The order largely at issue in the present case—Order No. 2022-01—expired the day before the

hearing—February 15, 2022. The City of Hailey, however, renewed the order that same day—Order No. 2022-02—with a new expiration date of April 16, 2022.

In relevant part, the Mask Order states:

Every person, shall, when in any indoor, or outdoor public place where social distancing is not possible, completely cover their nose and mouth, when members of the public are physically present for otherwise unprotected social interaction.

Dkt. 11-1, at 3. The Order includes eight exemptions.

a. Children under the age of 5.
b. Persons who cannot medically tolerate wearing a cloth face covering must wear or position themselves behind a face shield. A person is not required to provide documentation demonstrating that the person cannot medically tolerate wearing a cloth face covering.
c. Persons who are hearing impaired, or communicating with a person who is hearing impaired, where the ability to see the mouth is essential for communication, must wear or position themselves behind a face shield.
d. Persons, including on-duty law-enforcement officers, for whom wearing a face covering would create a risk to the person related to their work, as determined by local, state, or federal regulators or workplace safety guidelines.
e. Persons who are actively engaged in athletic competition.
f. Persons who are obtaining a service involving the nose, face, or head for which temporary removal of the face covering is necessary to perform the service.
g. Persons who are eating or drinking at a restaurant or other establishment that offers food or beverage service, so long as the person is able to maintain a distance of 6 feet away from persons who are not members of the same party as the person.
h. Outdoor public places where people can employ social distancing as recommended by CDC, while continuing to recommend face covering.

*Id*. at 4.

## B. Procedural Background

The lead Plaintiff in this case is the Health Freedom Defense Fund, Inc., a Wyoming corporation that opposes mask mandates. It asserts associational standing as three of its

members reside in Blaine County, Idaho, and claim they have been negatively affected by the City's mask mandate. Eleven individuals are also Plaintiffs. These individuals live in the City of Hailey, own businesses in the City of Hailey, or simply shop in the City of Hailey. Again, each purports to have suffered negatively as a result of the City's decision to institute the various mask orders.

On May 14, 2021, Plaintiffs filed a lawsuit in federal court. Case No. 1:21-cv-00212-DCN, Dkt. 1. The complaint in the present lawsuit is almost identical to the complaint in the prior lawsuit. Shortly after filing the aforementioned suit, however, the parties filed a joint stipulation, asking the Court to "stay and administratively close" that case. *Id*. at Dkt. 3. The parties made the request because Hailey's Mayor, Martha Burke, had recently rescinded the mask mandate due to a reduction of COVID-19 cases. The parties wanted to "stay and close" the case at that time, while leaving open the possibility of reopening the matter "should the mask mandate be reinstituted." *Id*.

In a subsequent order, the Court declined to hold the case on its docket indefinitely because the matter at issue was moot. *Id*., Dkt. 4, at 2. Whether any mask mandate would again be entered was "hypothetical," and—absent a live case or controversy—there was no reason to keep the case stayed and/or "administratively closed."[2] *Id*. at 2-3. The Court ultimately concluded that the best procedural course of action was to simply dismiss the case without prejudice should the need for refiling arise. *Id*. at 4.

---

[2] "Administratively closed" is not a term of art the Court uses. The Court understood the parties to mean, in essence, that the matter could be "closed" and removed from the active docket, but remain on the books should matters necessitate its resurrection.

On September 13, 2021, Mayor Burke issued a new mask mandate—Order No. 2021-06. On September 27, 2021, Plaintiffs filed the instant lawsuit. Dkt. 1.

In the present case—again, similar to the last—Plaintiffs bring two causes of action. Count I is based upon Federal Preemption and the Supremacy Clause and is, frankly, somewhat confusing. Count II alleges the City is violating Plaintiffs' Due Process rights under the Fourteenth Amendment to the United States Constitution.

On October 19, 2021, the City filed a Motion to Dismiss. Dkt. 11. Relying on Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the City asserts Plaintiffs lack standing to bring their claims and, further, even if they had standing, the City contends Plaintiffs have not brought any cognizable legal claims. Plaintiffs oppose the motion. Dkt. 12.

Once the matter was fully briefed, the Court set the matter for a hearing. Dkt. 17. Shortly thereafter, Plaintiffs filed a Motion for Preliminary Injunction. Dkt. 18. The City not only opposed Plaintiffs' Motion (Dkt. 20), but concurrently filed a Motion to Strike (Dkt. 21) seeking to exclude three declarations Plaintiff had included in support of its Motion for Preliminary Injunction.

While the already scheduled Motion to Dismiss had the potential of being dispositive of the entire case, the Court, nevertheless, set the remaining motions for oral argument at the time already appointed to conserve judicial resources. Dkt. 22.

Two days before the scheduled hearing, Plaintiffs filed a Motion to Supplement. Dkt. 27. In this motion, Plaintiffs ask the Court to take notice of various comments by mayors and/or the Director of Idaho's South Central Public Health District regarding the

efficacy of masks and the purported "mental health strain" mask mandates may cause. *Id*. at 2. The City did not have time to respond to the Motion prior to the hearing and this decision will issue prior to the expiration of the City's response time. As will be explained below, however, because Plaintiffs' filing is of marginal relevance to the Court, a response from the City is unnecessary.

Following oral argument on February 16, 2022, the Court took the matters under advisement and now issues the following decision.

## IV. DISCUSSION

For organizational purposes, the Court will address each motion individually. The applicable legal standards and any analysis will be included in the relevant sections.

### A. Motion to Dismiss

In its Motion to Dismiss, the City first asserts Plaintiffs lack Article III standing to bring their claims under Federal Rule of Civil Procedure 12(b)(1).

The City also argues that standing aside, Plaintiffs' claims fail as a matter of law and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). As it relates to the first cause of action, the City explains that Plaintiffs cannot bring a preemption claim under the Food, Drug, and Cosmetics Act ("FDCA") because that act does not allow private causes of action. The City next contends that Plaintiffs second claim regarding Due Process lacks a cognizable legal theory.

Plaintiffs counter they are not bringing a preemption claim under the FDCA, but rather under the Supremacy Clause. This distinction aside, Plaintiffs admit that while

preparing their brief[3] on the instant motion, they realized that the Supremacy Clause—like the FDCA—*does not* create a private cause of action. Dkt. 12, at 7. Given Plaintiffs' abandonment of Count I, the Court dismisses the same with prejudice.

Thus, at this point, the Court need only analyze the City's 12(b)(1) standing arguments, and its 12(b)(6) argument against Plaintiffs' single remaining claim for violation of Due Process under the Fourteenth Amendment.

1. *Rule 12(b)(1)*

a. Legal Standard

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge jurisdiction either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (holding a jurisdictional attack may be facial or factual). Where, as here, an attack is facial, the court confines its inquiry to allegations in the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

When ruling on a facial jurisdictional attack, courts must "accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *De La Cruz v. Tormey*, 582 F.2d 45, 62 (9th Cir. 1978) (cleaned up). However, the plaintiff bears the burden of alleging facts that are legally sufficient to invoke the court's

---

[3] On the matter of briefing, the Court notes that some of Plaintiffs' briefs fail to comply with the Court's rules for motion practice. While Plaintiffs' briefs at Dkts. 12 and 18 comply, their briefs at Dkts. 23 and 24 appear to utilize "minimal spacing" in an effort to meet the page limitations. Under the Local Civil Rules for the District of Idaho, such practice is "not acceptable." Dist. Idaho Loc. Civ. R. 7.1(a)(2). The Court will not strike Plaintiffs' non-conforming briefs, but admonishes Plaintiffs' counsel to abide by the local rules for motion practice in the future.

jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

      b.  <u>Analysis</u>

      Plaintiffs' complaint must meet Article III's standing requirements to establish subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Federal Courts may only interpret actual "Cases" or "Controversies" under U.S. Const. art. III, § 2. *California v. U.S. Dep't of Homeland Sec.*, 476 F. Supp. 3d 994,1004 (N.D. Cal. 2020). The Supreme Court has provided three elements a plaintiff must prove to establish standing: (1) "The plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

      In addition, an association has standing "to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 181 (2015) ("*Laidlaw*").

    *(i)*    *Injury in fact*

      This case primarily concerns injury in fact, the "[f]irst and foremost" of the three

elements of standing. *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 103 (1998).

Under the present allegations, none of the Plaintiffs can show any injury as a result of the City's actions. Plaintiffs do not allege any of them have ever been cited for violating the current mask mandate (or any prior mask mandate), nor do any assert they have been personally forced to wear a mask. To be sure, Plaintiffs strongly object to the mask mandate, but their mere objection does not qualify as a concrete or particularized injury. Other Courts have routinely so held.

In *Bechade v. Baker*, for example, the district court found that because the plaintiff never alleged that she had "*personally* been forced to wear a mask . . . [she] ha[d] not established that she suffered any concrete and particularized injury." 2020 WL 5665554, at *2 (D. Mass. Sept. 23, 2020). Without this critical element, plaintiff's complaint was "nothing more than disagreement with the policy underlying adoption of the requirement, and precedent is clear that '[a] mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury.'" *Id (quoting United States v. AVX Corp.*, 962 F.2d 108, 114 (1st Cir. 1992)). *See also*, *Oakes v. Collier Cty. Eyeglasses*, 515 F. Supp. 3d 1202, 1214 (M.D. Fla. 2021) (finding no standing where the individual was never cited for mask mandate violations); *Parker v. Wolf*, 506 F. Supp. 3d 271, 288 (M.D. Pa. 2020) (finding that the "Mask Mandate [did not] *distinctly* affect plaintiffs" and that their complaints were simply "generalized grievances") (cleaned up).

Plaintiffs strongly oppose this characterization of their claims as overly simplistic. They contend that this case is about more than just their opposition to the mask mandate

because they have, in fact, suffered numerous injuries as a result of the City's actions. As outlined in their Complaint, Plaintiffs assert injuries including depression, social isolation, loneliness, breathing difficulties, headaches, anxiety, panic attacks, feelings of suffocation, and other "physical[], emotional[], and psychological[]" damages. Dkt. 1, ¶¶ 68-74. Plaintiffs argue that under *Laidlaw*, they need only articulate a "recreational, aesthetic, [or] economic" interest to satisfy the injury-in-fact standard. 528 U.S. at 183-184. Not so. While the "recreational, aesthetic, and economic" interest of the specific party in a *clean water act* lawsuit was sufficient to meet the definition of injury in fact, such is not the case here.

First, many of Plaintiffs' alleged injuries are generic—such as generalized stress, worry, or anxiety about wearing a mask. Others are more specific—such as headaches, dizziness, or difficulty breathing. These, and related harms that are medical in nature, need particular mention because the current mask mandate *already* carves out an exception for such situations. Per exemption (b), any person who cannot medically tolerate a face mask need not wear one, but can opt to "position themselves behind a face shield." Dkt. 11-1, at 4. Critically, documentation *is not* required for anyone to avail themselves of this option. Many of Plaintiffs' alleged injuries would fall under this medical exemption and, as a result, are not redressable. And even if there was no medical exemption available, Plaintiffs would still likely not prevail due to the speculative nature of their claims. *See K.B. v. Calloway Cty. Sch. Dist. Bd. of Educ.*, 2022 WL 125929, at *3 (W.D. Ky. Jan. 12, 2022) (finding that even if some adverse medical effects are "possible" from wearing a mask, that does not mean any are "likely" or "irreparable").

Moreover, even if there was no exemption, and the claimed medical problems were

likely, the fact remains that no entity or person is forcing or threatening Plaintiffs to wear a mask. Until that happens, an injury has not occurred. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016) ("A "concrete" injury must be "*de facto*"; that is, it must actually exist.")

Second, besides personal medical concerns, Plaintiffs vaguely and summarily allege that economic and societal injuries could result from mask mandates. *See* Dkt. 1, at 20 ("masks dehumanize society") ("requiring children to wear masks . . . disrupts their development"); at 23 (Ms. Mercer's "business has suffered[] due to the Mask Mandate"). Again, vague or general allegations are not enough to establish standing. The Supreme Court has made clear that any injury must be concrete—which the Court has also described as direct, real, and palpable—not abstract. *See, e.g., Lujan,* 504 U.S. at 560 ("concrete"); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("palpable, as opposed to merely abstract"); *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) ("real"); *United States v. Richardson,* 418 U.S. 166, 180 ("a direct injury"). Absent any direct injury, these generalized allegations fall flat.

And third, it is difficult to discern whether some of Plaintiffs' "negative results" were actually a result of the City's actions. For example, Plaintiff A.K.G. alleges that she was forced to drop out of her dance class because of her inability to tolerate wearing a mask in accordance with the City's orders.[4] This contention aside, the same result could still have occurred even in the absence of the City's mask mandate. That particular dance studio—

---

[4] Again, A.K.G. could have opted for a face-shield and would still have been in compliance with the City's policy.

like many private businesses—may have still enforced a mask mandate.

Plaintiffs have not alleged any specific injuries that have occurred as a result of their failure to wear a mask. Some have alleged medical injuries, but each of those is easily remedied under exemption (b) of the City's orders. As for the other asserted economic and societal harms, Plaintiffs have not alleged anything other than generalized grievances.

While the Court's finding as it relates to the "first and foremost" of standing's three elements is dispositive, the Court will briefly address the remaining factors.

(ii)     *Causal Connection*

As just mentioned, because there is an available remedy for many of Plaintiffs' concerns, it is difficult to find that there is a traceable connection between the injury and the challenged ordinance when the ordinance provides multiple exemptions. As noted, none of the Plaintiffs have been cited, fined, threatened, or otherwise punished for *failing to abide by the mandate*. Neither has any Plaintiff been coerced or forced to wear a mask *in accordance with the mandate*. Each Plaintiff states that he or she either wears a mask against his or her wishes, or chooses not to participate in the underlying activity because he or she does not want to wear a mask. Be that as it may, none of the Plaintiffs have suffered any negative consequences *from the City* as a result of their personal choices.

(iii)    *Redressability*

Finally, it is also difficult to find that the harm alleged could be redressed by a favorable ruling for Plaintiffs. While an order overturning the City's mask mandate would redress Plaintiffs' concerns in one respect, each would still be subject to multiple mask mandates in schools, houses of worship, medical establishments, and numerous private

businesses. Thus, the Court could potentially alleviate a portion of Plaintiff's concern, but could not (in this lawsuit) redress many of their alleged injuries.

      c.  <u>Conclusion</u>

Ultimately, the Court finds that Plaintiffs have not alleged any injury in fact. Even taking the specific medical injuries at face value—as the Court must at this stage—none are concrete, and each can be remedied under the current mandate. Furthermore, many of the other injuries are only vaguely asserted or lack necessary foundation. None are imminent. The Court also cannot find the requisite connection between the cause and effect; nor can it find that a decision here would redress the overarching harm Plaintiffs wish to remove.

The Court has not been able to locate a single case in which Plaintiffs challenging a mask mandate have been granted standing.[5] At oral argument, Plaintiffs' counsel could not point to any either.

The above aside, even assuming arguendo that Plaintiffs did have Article III standing, their sole Due Process claim, as explained below, fails as a matter of law.

  2.  *Rule 12(b)(6)*

      a.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6)

---

[5] Interestingly, numerous courts have granted standing to individuals bringing suit to *enforce* or *reinstitute* mask mandates because their children were harmed as a result of *not* requiring masks (at schools for example). *See, e.g., Doe 1 v. Perkiomen Valley Sch. Dist.*, 2022 WL 356868, at *7 (E.D. Pa. Feb. 7, 2022); *E.T. v. Morath*, 2021 WL 5236553, at *8 (W.D. Tex. Nov. 10, 2021); *ARC of Iowa v. Reynolds*, 2021 WL 4166728, at *7 (S.D. Iowa Sept. 13, 2021).

dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[ ] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

b. Analysis

The City asserts that Plaintiffs' Due Process claim must be dismissed because it fails to state a claim upon which relief could be grated. Under the circumstances, the Court must agree. As outlined below, numerous courts across the country have heard similar arguments as those presented by Plaintiffs here and each of those courts have found the plaintiffs failed to state claims upon which relief could be granted.

The Court will first discuss Due Process under the Fourteenth Amendment, Plaintiffs' various arguments, and why none of their arguments implicate a fundamental

MEMORANDUM DECISION AND ORDER - 15

right. The Court will then discuss the level of scrutiny it must apply to the City's actions in light of its findings regarding Plaintiffs' claims.

The Due Process Clause of the Fourteenth Amendment provides that no "State [may] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1.

As interpreted, the Fourteenth Amendment has both substantive and procedural dimensions. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). This case concerns substantive due process.

To state a substantive due process claim, a plaintiff must allege (1) a valid liberty or property interest, (2) which the government infringed in an arbitrary or irrational manner. *Vill. of Euclid, Ohio v. Ambler Realty Co*., 272 U.S. 365, 395 (1926). Certain rights or liberties have been deemed "fundamental," so they receive greater protection. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

Once the Court has analyzed the rights at issue, it can then determine the appropriate level of scrutiny to apply to the challenged actions. Strict scrutiny is appropriate if the challenged regulation targets a suspect class or burdens the exercise of a fundamental right. *Plyler v. Doe*, 457 U.S. 202, 216–17, (1982). In other cases, rational-basis scrutiny is appropriate. *Id.*

Plaintiffs claim they have a fundamental liberty interest in medical autonomy. The Court agrees. Such a proposition sounds in caselaw. *See e.g., Glucksberg*, 521 U.S. at 725; *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990); *Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014).

MEMORANDUM DECISION AND ORDER - 16

That said, the wearing of a cloth (or even medical grade) face covering is *not* medical treatment. It is not an intrusion on the body. Numerous courts have rejected Plaintiffs' argument and have found that while there is a fundamental right to medical autonomy, mask-mandates are not a form of medical treatment that triggers a fundamental liberty interest. *See, e.g., Miranda ex rel. M.M. v. Alexander*, 2021 WL 4352328, at 4 (M.D. La., Sept. 24, 2021) (noting that "there is no fundamental constitutional right to not wear a mask")*; Denis v. Ige*, 2021 WL 3892657 (D. Haw., Aug. 31, 2021) (dismissing a Fourteenth Amendment challenge to a statewide mask-mandate with prejudice because mask-mandates "do not infringe on fundamental rights"); *Zinman v. Nova S.E. U., Inc.*, 2021 WL 4025722, at 17 (S.D. Fla. Aug. 30, 2021) (noting that "nor can one plausibly allege that the government is requiring medical treatment by requiring individuals to wear a face mask"); *Klaassen v. Trustees of Indiana U.*, 2021 WL 3073926, at 24 (N.D. Ind., July 18, 2021) (denying a motion for a preliminary injunction against a university's mask-mandate and COVID-19 testing protocol because the court "decline[d] the students' invitation to expand substantive due process rights to include the rights not to wear a mask or to be tested for a virus"); *Forbes v. County of San Diego*, 2021 WL 843175, at 5 (S.D. Cal., Mar. 4, 2021) (granting a motion to dismiss a due process challenge to California's statewide mask mandate because the mandate did not implicate "a fundamental liberty interest protected by the substantive component of the Due Process Clause"); *Stewart v. Justice*, 518 F. Supp. 3d 911, 916 (S.D. W.Va., Feb. 9, 2021) (dismissing a substantive due process challenge to statewide mask mandate with prejudice). The Court concurs with these other courts that have addressed this question—mask mandates do not implicate a

fundamental right.

The Court must digress momentarily to address two related arguments.

First, within the "fundamental right" context, Plaintiffs' claim—as part of their Complaint, but not in either of the pending motions—that they have a fundamental right to breathe fresh air. While not presented in briefing or at oral argument, the Court notes this argument has also been rejected. *See e.g., Denis v. Ige*, 538 F. Supp. 3d 1063, 1081 (D. Haw. 2021)

Second, Plaintiffs claim they have a fundamental right to be free from "nonconsensual human experimentation, borne out of international jus cogens[6] norms." Dkt. 12, at 11. In bringing this argument, Plaintiffs cite to the atrocities of Nazi Germany and World War II. The City is quick to point out the abhorrent nature of such a comparison. Plaintiffs adamantly clarify that they are not comparing mask mandates to German concentration camps and World War II, but that they were "literally required by caselaw to establish the necessary factual basis of the *jus cogens* prohibition against human experimentation without consent—with the unfortunate necessity to begin the story where it started, in the International Military Tribunal established in 1945 in the wake of World War II." *Id.*

The Court understands Plaintiffs' explanation of the history of *jus cogens* norms.

---

[6] "*Jus cogens* is related to customary international law (the direct descendant of the law of nations), which the Restatement defines as the 'general and consistent practice of states followed by them from a sense of legal obligation.'" *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 714 (9th Cir.1992) (quoting Restatement (Third) of the Foreign Relations Law of the United States § 102(2) (1987)). "These norms, which are derived from values taken to be fundamental by the international community are binding on all nations, and can not be preempted by treaty." *United States v. Struckman*, 611 F.3d 560, 576 (9th Cir. 2010).

Nevertheless, the explanation lacks tact. Furthermore, the suggestion that being asked to simply wear a mask to protect the health of individuals and communities is even in the same realm as torture or human experimentation strains reason and is offensive. The propriety of such a comparison aside, this argument too has been soundly rejected. *See e.g., Doe v. Franklin Square Union Free Sch. Dist.*, No. 2:21-5012-FB-SIL, 2021 WL 4957893, at *20 (E.D.N.Y. Oct. 26, 2021) ("[P]laintiff argues that the Mask Mandate violates the international norm that one cannot be coerced into medical experimentation without consent. The Mask Mandate is not an experiment or clinical trial; it is a school safety measure. Recasting it as an unlawful human experiment is an irrational leap of logic."). Even the arguably more intrusive requirement that persons be vaccinated has not found to fall within this category of "medical experimentation." *See Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 528 (S.D. Tex. 2021) ("Equating the injection requirement to medical experimentation in concentration camps is reprehensible. Nazi doctors conducted medical experiments on victims that caused pain, mutilation, permanent disability, and in many cases, death."). This Court again joins numerous other courts in declining to accept this comparison and this argument.

In sum, the Court rejects Plaintiffs' more general theory that they have a fundamental right to be free from masks under a medical treatment argument, but also rejects their theory that they have a fundamental right to breathe fresh air unencumbered by a mask or that masks constitute forced human experimentation.

Because Plaintiffs have not alleged a violation of any fundamental right, the Court now joins other courts throughout the United States in applying rational basis review to the

City's actions. *See Stepien v. Murphy*, 2021 WL 5822987, at \*5 (D.N.J. Dec. 7, 2021) ("Because the mask mandate does not target a suspect class or burden a fundamental right, it receives not strict scrutiny but rational-basis review."); *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at \*2 (N.D. Ga. May 12, 2021) ("Rational basis is the proper standard of review for the mask mandate. The mandate neither discriminates against a protected class nor infringes a fundamental right.").

Rational-basis review is highly deferential to government action and easily met. *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981). This test only looks for "the *existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body." *United States v. Masters*, 315 F. App'x 131, 133 (11th Cir. 2008) (cleaned up). As the Supreme Court has held, under rational basis review, "a state 'has no obligation to produce evidence to sustain the rationality of a statutory classification.'" *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993)). Rather, a law is presumed constitutional, and the plaintiff must "negate every conceivable basis that might support it," even if that basis has no foundation in the record. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993).

Due to the related subject matter, many courts have looked to *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), for guidance when reviewing whether mask mandates are related to the interest of those imposing such actions. In *Jacobson*, the Supreme Court upheld a Massachusetts statute regarding mandatory vaccination. *Id*. at 12. The Court recognized that laws protecting the public health "when endangered by epidemics of

disease" fall within a state's broad police power. *Id*. at 24–25, 37. *Jacobson* indicates these laws should survive constitutional scrutiny so long as they have a "real or substantial relation to" protecting the public health and the regulations are not "beyond all question, a plain, palpable invasion of rights secured by [ ] fundamental law." *Id*. at 31.

Plaintiffs argue against the use of *Jacobson* and contend strict scrutiny should apply in this case. First, because Plaintiffs' claims do not implicate any fundamental right, strict scrutiny is not appropriate. Second, even without guidance from *Jacobson* as it relates to the type of issues at hand (global pandemics and various health measures), the Court would still apply traditional rational basis review to this claim because, again, there is no suspect class or fundamental right at issue. *See Glucksberg*, 521 U.S. at 728 (law that does not implicate a fundamental right must only be "rationally related to legitimate government interests").

Ultimately, there can be little doubt in this case that the City's mask mandate is rationally related to a legitimate government interest—that of the health and safety of its citizens. Other courts have similarly found. *See e.g., Stepien*, 2021 WL 5822987, at *7 ("Defendants' arguments [in support of mask mandates] easily clear the relatively low bar of rational basis scrutiny."); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1081 (D. Haw. 2021) ("Mask Mandates are rationally related to a legitimate government purpose").

Now, to a certain degree, Plaintiffs do not dispute that the City has a legitimate interest in protecting general health and safety or even in stemming the spread of COVID-19. They instead contest that the chosen method, masks, are not a good fit for this purpose. It is not, however, the Court's duty to evaluate whether the City's decision was "right" or

"wrong," but whether it was related to a legitimate interest. Again, other federal district courts have so held. *See Stepien*, 2021 WL 5822987, at *7 ("Defendants are not required to win the policy debate in order to prevail here."); *Forbes v. Cty. of San Diego*, 2021 WL 843175, at *5 (S.D. Cal. Mar. 4, 2021) (finding plaintiff's "contentions disputing the scientific basis for the Mask Rules are simply not enough to state a plausible clam that the rules are not rationally related to a legitimate government interest."); *Hopkins Hawley LLC v. Cuomo*, 2021 WL 465437, at *7 (S.D.N.Y. Feb. 9, 2021) (reasoning plaintiffs' averments that COVID-19 policy "went against the grain of scientific proof" did not satisfy the high bar for rational basis review); *Oakes v. Collier Cty.*, 515 F. Supp. 3d 1202 (M.D. Fla. Jan. 27, 2021) (explaining that while plaintiff "may disagree with the public health efficacy of mask orders . . . federal courts do not sit in a policy-checking capacity to second guess the wisdom of [government] acts").

In sum, there is no caselaw requiring the City's actions to be perfect;[7] the action simply must be rationally related to the stated interest. *Wagner v. Haslam*, 112 F. Supp. 3d 673, 698 (M.D. Tenn. 2015) ("Where rational basis review applies, the Constitution does not require policymakers to choose the best available option, only that policymakers choose an option that is rationally related to a legitimate governmental objective.").

Finally, even if the Court struggled to find a rational relationship between the City's mandate and its duty to regulate health and safety—which it does not—the mask mandate

---

[7] The Court declines to wade into Plaintiffs' arguments regarding the efficacy of masks, their statements questioning science and the medical community, or their suppositions that masks actually *cause* harm as opposed to taking it away. Again, the Court does not question the wisdom of the policy, just whether there is a rational basis for it. Suffice it to say, the national and international medical community disagrees with Plaintiffs on all accounts and there is a rational basis for the City's actions here.

does not rise to the level of being "outrageous" or "shocking." *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) ("Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty.") (cleaned up). Said another way, whether or not the City's mandates are necessary or wise—the Court believes they are both—they are not "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance [them] even were [they] accompanied by full procedural protection." *Southerland v. City of New York*, 680 F.3d 127, 152 (2d Cir. 2012); *see also Our Wicked Lady LLC v. Cuomo*, No. 21-CV-0165 (DLC), 2021 WL 915033, at *4 (S.D.N.Y. Mar. 9, 2021) (acknowledging "the health crisis is serious" and "[t]he setting of the appropriate limits for the City is not up to the plaintiffs or a court—it is up to the duly elected representatives of citizens").

c.   Conclusion

In this case, Plaintiffs have not alleged a violation of their fundamental rights. As a result, rational basis review applies. The City's actions easily pass muster under this standard. Keeping citizens safe during a global pandemic with minimally inconvenient measures is rational. Upon review of the specific facts of this case—and in the absence of *any* caselaw supporting Plaintiffs' position here—the Court finds Plaintiffs cannot state a claim for relief.

The City's Motion to Dismiss is GRANTED.

**B. Other Motions**

Because the Court is granting the City's Motion to Dismiss, the remaining motions

are moot. Nevertheless, for completeness of the record, the Court will briefly address the remaining matters.[8]

"Plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (cleaned up).

First, as explained above in the Court's analysis of the City's Motion to Dismiss, Plaintiffs *cannot* succeed on the merits of their claims because they do not have standing. Furthermore, even if Plaintiffs had standing, they have not implicated a fundamental right and the City's actions are rationally related to its interest in protecting health and safety.

Second, Plaintiffs are not likely to suffer irreparable harm as a result of the City's actions. To understand the Court's holding here, it must briefly address the City's Motion to Strike. Dkt. 21. In support of its Motion for Preliminary Injunction, Plaintiffs include the declarations of three individuals. Dkts. 18-2–18-4. The individuals who authored these declarations each reside in Germany. Each appears to be in the medical field—two psychologist and a veterinarian—however, none appear to have specialized knowledge in virology or epidemiology. This is one reason the City argues their testimony should be stricken. As one Court has explained, however, such a situation is not determinative:

---

[8] The Court feels this is necessarily primarily because it is not uncommon for a plaintiff to file suit and immediately bring a motion for preliminary injunction. Said differently, in this case, the Court was first presented with a dispositive motion *and then* a motion for preliminary injunction. However, because cases dealing with the pandemic are not likely going away—in fact, the same Plaintiffs in this case have another suit pending in this District on similar topics (1:21-cv-00406-CWD)—the Court wishes to memorialize its determination on these final motions in the event similar cases are brought, a motion for preliminary injunction is filed first, and similar arguments are raised.

Rule 702 and *Daubert* mandate that the subject matter of the witness's testimony match his or her area of proficiency. *See, e.g., Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1376 (M.D. Ga. 2007). But an "expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008). *See also Maiz*, 253 F.3d at 665 (rejecting the argument that the proffered expert was unqualified because he lacked experience in the specific field of real estate development); *McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004) (recognizing that a "physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline").

*Giusto v. Int'l Paper Co.*, 2021 WL 5493494, at *11 (N.D. Ga. Nov. 23, 2021). Thus, while it concerns the Court that none of these individuals have specialized knowledge on these highly technical topics (virology and epidemiology), this fact—standing alone—might not warrant striking their opinions.

In addition to the above concern, however, the City also points out that none of the experts explain how they have received their "expert" designation here, or if they have been designated by a court as experts before. Finally, it appears that all have strained relationships within their professional communities.[9]

Plaintiffs noted at oral argument that disagreements within the scientific community are at the heart of science and innovation. Be that as it may, when—as here—there is not a mere disagreement, but rather an abundance of overwhelming evidence *against* a particular opinion,[10] those fringe opinions becomes suspect.

---

[9] For instance, various publications have retracted articles by some of these individuals. Also, certain educational institutions have distanced themselves or severed ties with these purported experts as a result of their published opinions and commentary.

[10] The World Health Organization, the Center for Disease Control, and the Mayo Clinic all recommend the use of masks as a safe and effective measure to slow the spread of the COVID-19 virus. *See, e.g.* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-adetail/

In short, the Court agrees with the City that under *Daubert* and Federal Rule of Evidence 702, the three declarations would likely need to be stricken. Yet, even if the Court were to consider these opinions, it would not change its preliminary injunction analysis. As the Court noted above, the question of whether there is harm in the first place is suspect—because Plaintiffs have not been punished for not wearing a mask and have not been forced to wear one—and any perceived harm is marginal and does not rise to an "irreparable" level requiring intervention.

Finally, a preliminary injunction is not in the public's interest. To the contrary, endeavoring to curb the spread of this disease—via masks and other avenues—is in the public's interest. In like manner, the balance of equities weighs against an injunction. An injunction of this type could very likely exacerbate the COVID-19 pandemic, as masks have been shown to reduce the spread of the disease. [11]

Finally, Plaintiffs recently filed a Motion to Supplement. Dkt. 27. While Plaintiffs broadly state they want to supplement the record with information that occurred "after the date of [their] Complaint," they do not specify in their motion what pleading they are actually supplementing. Dkt. 27. Later on in their brief, however, Plaintiffs state this new information goes to "the heart of the Motion for Temporary and Preliminary Injunctive

---

coronavirus-disease-covid-19-masks (noting masks are "a key measure to reduce transmission and save lives"); https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html (CDC Director Dr. Robert R. Redfield stated that "cloth face coverings are one of the most powerful weapons we have to slow and stop the spread of the virus – particularly when used universally within a community setting"); https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-mask/art-20485449 (noting that "[f]ace masks combined with other preventive measures, such as getting vaccinated, frequent hand-washing and physical distancing, can help slow the spread of the virus.").

[11] *See supra*, note 10.

Relief." Dkt. 27-1, at 3. Thus, the Court assumes Plaintiffs seek to supplement their Motion for Preliminary Injunction.

Plaintiffs explain in their motion that, "upon information and belief," the Idaho South Central Public Health District Director recently held a call with various mayors to discuss COVID-19 precautions. *See generally id*. Apparently, during the call, there was a discussion regarding the long-term affects of wearing masks and how those stacked up against any benefits. *Id.* Certain mayors then made public comments on these topics. *Id*.

Plaintiffs request that the Court take this information into account to help it determine "whether an experimental medical device should remain mandatory." Dkt. 27-1, at 4. Setting aside the evidentiary issues with Plaintiffs' submission, the Court notes that it consists of nothing more than various individuals' opinions. It is not expert testimony or legislative commentary; it is just commentary by a few people. The Court has no problem with such individuals expressing their opinions, or with the opinions themselves. However, as already noted, it is not the Court's role to sift through the City's policy choices and determine whether they are right or wrong; its role is simply to determine whether there is a rational basis for the choices the City has made.[12] Irrespective of what certain individuals have said or may say in the future—or even if professional guidance changes (such as from the Center for Disease Control)— the Court has already found that, when faced with an unprecedented and unanticipated global pandemic, the City's decision to require masks in

---

[12] The Court recognizes Plaintiffs are arguing not only that requiring masks is "wrong" in their opinion, but also that the City's decision is not "rational" given the conflicting opinions on the subject. Again, as discussed repeatedly, even accepting some evidence to the contrary, the Court is not obligated to overturn the City's determination when there is also evidence to support the action the City undertook. Any, or even some, rationale will suffice.

accordance with professional medical guidance was rational. Ultimately, the Court finds Plaintiffs' Supplement to be of little value. The Court has, accordingly, ruled on the pending motions without the benefit of even allowing the City an opportunity to respond to the submission. And, because it does not reach Plaintiffs' Motion for Preliminary Injunction, the supplemental motion on the same is deemed MOOT.

In sum, were Plaintiffs' Motion for Preliminary Injunction and the City's Motion to Strike presented to the Court first, it would have likely granted the Motion to Strike and denied the Motion for Preliminary Injunction. As it sits, however, because the Court is granting the City's dispositive Motion to Dismiss, these remaining matters are officially MOOT. Additionally, because the Court is not affirmatively ruling on the Motion for Preliminary Injunction, Plaintiff's Motion to Supplement is, likewise, MOOT.

## V. CONCLUSION

The Court finds that Plaintiffs lack standing because: (1) they have not alleged any injury in fact; (2) there is no causal connection between the City's actions and Plaintiffs' alleged injuries; and (3) a favorable ruling from this court would not fully remedy Plaintiffs' concerns. Even assuming Plaintiffs had standing, however, the Court finds their Due Process claim fails as a matter of law because none of the "rights" at issue are fundamental. In light of this, the Court reviews the City's actions under a rational basis standard. In doing so, it finds the City's actions are related to its legitimate interest in protecting its citizens. The Court joins literally dozens of other courts that have found likewise. The City's Motion to Dismiss is GRANTED. All other motions are MOOT.

## VI. ORDER

1. The City's Motion to Dismiss (Dkt. 11) is GRANTED. This case is DISMISSED

   WITH PREJUDICE[13] and CLOSED.

2. Plaintiffs' Motion for Preliminary Injunction (Dkt. 18), the City's Motion to Strike

   (Dkt. 21), and Plaintiffs' Motion to Supplement (Dkt. 27) are MOOT.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil

   Procedure 58.

DATED: March 10, 2022

David C. Nye
Chief U.S. District Court Judge

---

[13] The Court is unaware of any set of facts in this case that would redeem Plaintiffs' Complaint. Numerous cases have been brought throughout the United States; none have survived. Plaintiffs' claims, therefore, are dismissed with prejudice as leave to amend would be futile. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990).